## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HIEP VAN NGUYEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    No. CIV-26-87-R |
| | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY, | ) |
| | ) |
| Respondent. | ) |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Hiep Van Nguyen, a noncitizen proceeding pro se[1], seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[2] United States District Judge David L. Russell referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, Doc. 8, and the time for Petitioner to reply has lapsed, *see* Doc. 6. So the matter is at issue.

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas corpus relief, in part.

## I.    Factual background and procedural history.

Petitioner is a citizen of Vietnam who entered the United States in July 1993, "at or near San Diego, California, as a Refugee, class of admission RE-8." Doc. 8, at 2 (citing Ex. 1, at 1-2). In 2003, the State of Indiana convicted Petitioner for possession of child pornography, a Class D Felony. *Id.* at 2-3 (citing Ex. 1, at 2 & Ex. 2). Petitioner was detained and placed into Immigration and Customs Enforcement (ICE) Enforcement Removal Operations's (ERO) custody on December 16, 2023, "and he was deemed amenable to removal pursuant to [the Immigration and Nationality Act (INA)] § 237(a)(2)(A)(iii)." *Id.* at 3 (citing Ex. 1, at 2 & Ex. 3).

On January 7, 2004, an Immigration Judge (IJ) entered an order of removal against Petitioner. *Id.* at 3 (citing Ex. 1, at 2 & Ex. 4). On January 20, 2004, ICE ERO submitted a travel document to the Embassy of Vietnam. *Id.*; Doc. 8, Ex. 1, at 2. On March 2, 2004, ICE served Petitioner with his 90-day post-order custody review. Doc. 8, at 3 (citing Ex. 1, at 2 & Ex. 5).

On May 24, 2004, a representative with the Vietnamese embassy advised ICE ERO that a travel document would not be issued for Petitioner due to the lack of a repatriation agreement between Vietnam and the United States at

2

that time. *Id.* (citing Ex. 1, at 2). That same day, Petitioner's post-order custody review was "completed and submitted to a Supervisory Detention and Deportation Officer for review with recommendation for release." *Id.* On May 26, 2004, Petitioner was served with his Order of Supervision (OOS), *see* Doc. 8, Ex. 6, at 1, outlining his conditions of release and monthly check-in schedule, and released from ICE custody. *Id.* at 1, 3*;* Doc. 8, at 3.

In June 2018, Petitioner was encountered by ICE "after being arrested for outstanding traffic tickets, but ICE ERO determined there was no significant likelihood of removal in the foreseeable future." Doc. 8, at 3 (citing Ex. 1, at 3). In December 2018, Petitioner pleaded guilty to criminal trespass in Odessa, Texas. *Id.* On May 15, 2024, ICE ERO again "determined that there was no significant likelihood of [Petitioner's] removal in the reasonably foreseeable future." *Id.* at 3-4.

On November 25, 2025, at his monthly check-in, ICE arrested Petitioner and placed him into custody "given his final order of removal and a change in policy and bed space availability." *Id.* at 4 (citing Ex. 1, at 3 & Ex. 7 (Warrant of Removal/Deportation)); *see also* Doc. 1, at 8. Petitioner was transferred to the Cimarron Correctional Facility on November 27, 2025, where he remains detained. Doc. 8, at 4 (citing Ex. 1, at 3).

"On December 11, 2025, a [travel document request] was submitted to ICE ERO headquarters and . . . subsequently sent to the Consulate of Vietnam." *Id.*[3] Respondents allege that "[o]n December 19, 2025, Petitioner asked ICE ERO about being deported back to Vietnam as soon as possible" and "ICE ERO advised [him] that a [travel document request] is pending and [they were] waiting for a response from the consulate." *Id.* ICE also informed Petitioner that because "[he] does not have a passport, that may be delaying the process." *Id.* On February 2 and February 3, 2026, ICE ERO checked the status of Petitioner's travel document request and was advised it was still pending. *Id.*

After nearly five months in ICE detention and the filing of his habeas petition[4], ICE served Petitioner with a "Notice of Revocation of Release on March 17, 2026, and [he] was afforded an informal interview at which he was given an opportunity to respond to the reasons for [the] revocation." *Id.* (citing Ex. 1, at 4 & Ex. 8 (Notice of Revocation)).

## II.    Petitioner's claims.

---

[3]    Respondents have not provided the Court with the January 20, 2004, *see* Doc. 8, at 3, or December 11, 2025 travel document requests, *id.* at 4.

[4]    Petitioner filed his petition on January 16, 2026. Doc. 1, at 1.

Petitioner raises four grounds for relief:

Ground One: The Department of Homeland Security (DHS) has not provided him with a proper reason for his re-detention, "since [it] still [has] not been able to obtain the required travel documents to deport [him], even though [it has] been trying since 2005[.]"

Ground Two: "DHS has violated the *Za[d]vydas*[5] laws by detain[ing] [him] the second time in addition[] to the 6 months period of [his] first detention in 2005[.]"

Ground Three: "DHS has violated [its] rules and regulations because [it] did not provide any kind of notices that . . . lead[] to [his] arrest, and the revocation of ordered release under [his OOS]."

Ground Four: DHS violated the Administrative Procedure Act (APA) by not providing him with a "informal interview, indications of the causes for the revocation of [his] release and detention."

Doc. 1, at 7-8. He asks the Court to restore his "status of being ordered . . . release[d] under supervision, until a proper schedule[d] date is set for [his] deportation, and a request [for his] appearance being sent out for [his]

---

[5]    In *Zadvydas,* the Supreme Court interpreted 8 U.S.C. § 1231(a)(6)—which is "[a] special statute authoriz[ing] further detention if the Government fails to remove [an] alien during [the ninety-day removal period]"—to include "an implicit 'reasonable time' limitation [on detention], the application of which is subject to federal-court review." 533 U.S. 678, 682 (2001); *see also id.* at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem."). That reasonable time limitation is six months, and "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

departure."                *Id.*                at                8.

## III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort,* 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas,* 533 U.S. at 687); *see also Zadvydas*, 533 U.S. at 687 ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases.").

## IV.   Analysis.

### A.   The Court has jurisdiction to hear Petitioner's claims in Grounds One and Three.

The Government argues that this Court is "jurisdictionally barred" from reviewing Petitioner's claims regarding ICE's revocation of his OOS as "8 U.S.C. § 1252(g) strips district courts of jurisdiction over claims 'arising from the decision or action . . . to execute removal orders'" including "ICE's *decision*

and *actions* to revoke supervision." Doc. 8, at 11. Relying on *Tazu*, the Government maintains that "[c]ourts have recognized that re-detention is 'simply the enforcement mechanism' chosen to execute a removal order and is therefore insulated from district-court review." *Id.* (quoting *Tazu v. Att'y Gen. of United States,* 975 F.3d 292, 299-300 (3d Cir. 2020)).

The Government's position has previously been rejected by the Court, and the Court should do the same here. *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) ("Respondents' citation to the Third Circuit's *Tazu* decision is not persuasive in light of 'the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions' of § 1252" and "independently conclud[ing] that [the Court's] ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal. Instead, [the] [p]etitioner argues that he is detained in violation of the INA because Respondents . . . failed to comply with the applicable regulations prior to redetaining [him] after he was previously released on an OOS." (quoting *Montoya v. Holt,* No. CIV-25-1231-JD, 2025 3733302, at *5 (W.D. Okla. Dec. 26, 2025))) (record citations omitted), *motion for relief from judgment granted*, 2026 WL 686839 (W.D. Okla. Mar. 10, 2026); *see, e.g., Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D.

7

Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction . . . .").

> **B.    The Government improperly revoked Petitioner's OOS when it failed to give him notice upon revocation.**

In Ground One, Petitioner alleges Respondent failed to provide him with the reasons for his re-detention following his release on supervision "since [it] still [has] not been able to obtain the required travel documents." Doc. 1, at 7. In Ground Three, Petitioner alleges that Respondent "violated [its] rules and regulations because [it] did not provide any kind of notice warning of reasonable causes, that lead[] to [his] arrest and the revocation of [his] ordered release under [OOS]." *Id.* Because Petitioner's claims in Grounds One and Three are intertwined, the undersigned addresses them together and finds the Government violated its regulations pertaining to revocation of a noncitizen's OOS when it detained him.

The Government, asserts that ICE did not have to "provide an interview or advance notice upon re-detention" because of "ICE['s] broad discretionary authority [under 8 C.F.R. § 241.4(l)(2)] to revoke release when revocation is appropriate to enforce a removal order or when circumstances indicate release is no longer appropriate." Doc. 8, at 11. This Court has previously rejected the

8

Government's interpretation of § 241.4(l)(2) and should do the same here. *Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *5 (W.D. Okla. Jan. 15, 2026) ("Respondent contends that the requirements of notice and an informal interview in § 241.4(*l*)(1), and of a review process and interview in § 241.4(*l*)(3), are not applicable to noncitizens whose release is revoked pursuant to § 241.4(*l*)(2). Respondent has not cited authority for this position, and 'courts have consistently held otherwise.'" (quoting *Zhu v. Genalo,* 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) (collecting cases))); *cf. Cao,* 2026 WL 637617, at *2 ("Revocation for either reason [under 8 C.F.R. § 241.13(i)] triggers a notification requirement and a review process").

This requirement of written notice is bolstered by § 241.4(d), which provides:

> A copy of any decision by the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner to release or to detain an alien shall be provided to the detained alien.

8 C.F.R. § 241.4(d).

The Court also cannot ignore that the Government served Petitioner with his Notice of Revocation of Release and offered him an informal interview *after* he filed his habeas petition and ICE had already detained him for four-

plus months. *See* Doc. 8, at 4 & Ex. 8.[6] This indicates that the Government was aware that its regulations require a Notice of Revocation and a prompt informal interview, but it simply elected not to follow its regulatory procedures when it revoked Petitioner's OOS. *See K.E.O. v. Woosley*, 2025 WL 2553394, at *6 (W.D. Ky. Sept. 4, 2025) ("By eventually providing K.E.O. with this Notice, Respondents evidently, knew about their requirements and presumably had the opportunity to provide this Notice to K.E.O. upon her revocation. But they failed to do so. And in turn, violated their own regulations."); *J.L.R.P. v. Wofford*, 2025 WL 3190589, at *6 (E.D. Cal. Nov. 14, 2025) ("[T]here is no indication that the government ever had any intention of timely complying with the regulation as required, as it provided the untimely notice only after being prompted by petitioner's filing of his habeas petition."). At bottom, when the Government re-detained Petitioner on November 25, 2025, it failed to give

---

[6]    Petitioner was served with a warrant of removal/deportation, *see* Doc. 8, Ex. 7, but "[t]he warrant does not explain the reason for the revocation of Petitioner's supervision order, and where an [OOS] is revoked for unspecified reasons, the Court finds the risk of erroneous deprivation of liberty is high." *E.G.M. v. Scott,* 2026 WL 914803, at *4 (W.D. Wash. Apr. 3, 2026). The warrant was also served on Petitioner a day after his arrest, *see* Doc. 8, Ex. 7, and is a separate regulatory violation that is not raised by Petitioner. *See Guarnizo v. Quinones,* 2026 WL 982816, at *3 (M.D. Fla. Apr. 13, 2026) ("Generally, the warrant must be issued before the noncitizen's arrest.").

Petitioner Notice of Revocation or a prompt informal interview as required by 8 C.F.R. §§ 241.4(l) and 241.13(i).

Having determined that Petitioner's OOS was revoked without notice, the issue before the Court is whether the Government's improper revocation that it attempted to cure by belatedly serving Petitioner with a Notice of Revocation constitutes harmless error. *See Bahadorani v. Bondi,* No. CIV-25-1091-PRW, 2025 WL 3048932, at *2 (W.D. Okla. Oct. 31, 2025) ("The harmless error standard applies in deportation and administrative cases.") (first citing *Nazaraghaie v. I.N.S.,* 102 F.3d 460, 465 (10th Cir. 1996); then citing *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 870 F.3d 1222, 1238-39 (10th Cir. 2017)). And the undersigned determines that it does not.

This Court is not in agreement on when regulatory noncompliance is harmless and when it is prejudicial. *Id.* ("While the government failed to provide a Notice of Revocation of Release to Petitioner, the Court finds . . . such error has been mitigated by the government's substantial compliance with the law and cured by the opportunities Petitioner has had to contest his detention, both in front of ICE and this Court."); s*ee also Nguyen v. Bondi,* No. CIV-25-1204-JD, 2025 WL 4114231, at *5 n.8 (W.D. Okla. Dec. 31, 2026) ("To the extent that the failure to provide written notice or an informal interview is a regulatory violation that constitutes a procedural due process violation, the

11

remedy for such violation would not be release from custody but would be for Respondents to comply with the regulations."); *but see Cao,* 2026 WL 637617, at *6 ("This Court, in agreement with the majority view, has 'found that such regulatory defects amount to due process violations that entitle a petitioner to habeas relief.'" (quoting *Hamidi v. Bondi,* 2025 3452454, at *3-4 (W.D. Okla. Dec. 1, 2025))); *Pham v. Bondi,* No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) ("District courts in the Tenth Circuit . . . have found that a failure to establish changed circumstances [before revoking an OOS] amounts to a due process violation that justifies release."). And the undersigned has recommended denying relief to a petitioner alleging regulatory noncompliance in violation of 8 C.F.R. § 241.4 where the Government gave the petitioner "an opportunity for a personal interview to respond to the revocation, which he declined." *T. Nguyen v. Bondi,* No. CIV-25-1415-JD, 2026 WL 865739, at *6 (W.D. Okla. Jan. 20, 2026) (Report & Recommendation).

The undersigned finds Respondents' failure to comply with its regulations for over four months is not harmless error, and Petitioner has met his burden to show he was prejudiced.

In *T. Nguyen*, the petitioner was re-detained for three months before ICE eventually provided him with the reasons for the revocation of his OOS and an

12

opportunity for an informal interview. *Id.* at \*1; *see also* 8 C.F.R. § 241.4(l)(4) (noting that "[f]f the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section . . . [t]he normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily will be expected to occur within approximately three months after release is revoked."). Most notably, and unlike the case at hand, ICE provided the petitioner with an interview and opportunity to respond to the grounds for revoking his OOS *before* he filed his habeas petition. *T. Nguyen,* 2026 WL 865739, at \*4, 6.

Likewise, the Government's "reliance on *Bahadorani* is misplaced because it overlooks the fundamentally different circumstances presented" in Petitioner's immigration proceedings. *Li v. Bondi,* No. CIV-25-1408-J, 2026 WL 475133, at \*3 (W.D. Okla. Feb. 19, 2026). "In *Bahadorani*, Judge Wyrick noted that while the individual may not have received the initial notice, he was interviewed on the same day as his detention, informed of 'the reasons for his detention,' and was subsequently afforded a second post-detention interview where he was permitted to 'submit information concerning his custody.'" *Id.* Here, Petitioner was detained for four-plus months before the Government attempted to comply with its regulatory requirements under 8 C.F.R. § 241.4(l), and "[t]hat complete breakdown in process is not comparable to the

technical deficiency addressed in *Bahadorani* and squarely raises the constitutional concerns that justify habeas relief in this case." *Id.*[7]

The Government maintains that "Petitioner can show no prejudice in any event as he has since been provided an interview." Doc. 8, at 11. "But prejudice may be presumed when 'compliance with the regulation is mandated by the Constitution' and 'where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency.'" *K.E.O.,* 2025 WL 2553394, at *5.[8]

> **C.    The Government fails to meet its burden of showing changed circumstances necessitated revocation of Petitioner's OOS.**

---

[7]    "Judge Wyrick in *Bahadorani* acknowledge[d] there are circumstances where a violation of 241.13(i)(2) and (i)(3) can warrant habeas relief where the violation rises to the level of 'a serious substantive defect . . . beyond a mere failure to follow the regulation to a T.'" *Li,* 2026 WL 475133, at *3 n.2 (quoting *Bahadorani,* 2025 WL 3048932, at *3).

[8]    "[T]he Court notes several recent opinions by the Tenth Circuit have applied the [*United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260 (1954)] doctrine, albeit in different circumstances than habeas relief, and one such opinion specifically 'reserve[s] the ability to consider' whether prejudice is required in light of 'divergent views' from various circuits." *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *5 n.6 (W.D. Okla. Feb. 20, 2026) (quoting *Wright-Smith v. Fed. Aviation Admin.*, 2024 WL 5183255, at *3 (10th Cir. Dec. 20, 2024)). "Ultimately, even if prejudice were required, the Court is satisfied that Petitioner has been prejudiced upon review of the record." *Id.*

Even if the Court were to find the Government's belated Notice cured its failure to comply with 8 C.F.R. § 241.4(l), the undersigned finds the Government failed to make the proper determination that changed circumstances necessitated revocation of Petitioner's OOS as required by 8 C.F.R. § 241.13(i)(1).

ICE may revoke an OOS and "return the alien to custody" when, "on account of changed circumstances . . . there [becomes] a significant likelihood [of] the alien['s] remov[a]l in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1). "These regulations clearly indicate that, upon revocation of supervised release, it is *the Government's* burden to show a significant likelihood that the noncitizen may be removed." *Hall v. Nessinger,* 2026 WL 18583, at *6 (D.R.I. Jan. 2, 2026).

Relying on the declaration of Deportation Officer Juan Soto, Respondent asserts that:

> Based on the Government of Vietnam's willingness to accept its citizens, and the number of successful removals ERO has made to Vietnam [in Fiscal Year 2025], . . . removal of [Petitioner] to Vietnam is significantly likely in the reasonably foreseeable future.

Doc. 8, Ex. 1, at 4. First, "Courts have found that such increase in frequency of removals alone does not demonstrate significant likelihood of removal in the

15

reasonably foreseeable future." *Pham,* 2025 WL 3243870, at \*2 (collecting cases).

Officer Soto's declaration does not include any details evidencing a change in circumstances making Petitioner's removal more likely *before* his OOS was revoked. Instead, Officer Soto suggests that the only reason Petitioner was re-detained was his outstanding "final order of removal and a ***change in policy and bed space availability.***" Doc. 8, Ex. 1, at 3 (emphasis added).

The Government points to data that "ERO has removed 569 Vietnam citizens to Vietnam" and that "[t]he majority of these cases were citizens of Vietnam who entered the United States prior to 1995." *Id.* at 4. Even if the Government has successfully removed pre-1995 Vietnamese detainees in FY25, Respondent still has provided nothing to the Court suggesting that this time will be different for Petitioner, especially when they have not presented a Vietnamese birth certificate. *Nguyen v. Scott,* 796 F. Supp. 3d 703, 726 (W.D. Wash. 2025) (Government's reliance on declaration that 368 Vietnamese citizens were removed in FY25 "fail[ed] to rebut the evidence presented by Petitioner that his individual circumstances make removal unlikely."); *cf. T. Nguyen,* 2026 WL 865739, at \*5 ("Respondents have a copy of his Vietnamese birth certificate. So those potential administrative impediments to Vietnam's

16

acceptance of him do not apply."). Respondent also allegedly informed Petitioner that his lack of passport "may be delaying the [removal] process," *see* Doc. 8, at 4. However, Respondent has not attempted to explain how Petitioner's removal can be significantly likely in the reasonably foreseeable future when that administrative impediment exists.

The sole justification for Respondent's revocation of Petitioner's OOS appears to be that it has submitted a travel document request to Vietnam, which is still pending. *See* Doc. 8, at 4 (citing Ex. 1, at 3). "The mere request of a travel document by ICE is not a changed circumstance supporting re-detention under § 241.13." *Choy v. Woosley*, 2026 WL 324601, at *5 (W.D. Ky. Feb. 6, 2026).

While "Courts have recognized that Vietnam is now considering repatriation requests from the United States," it is still done "on a case-by-case basis." *Duong v. Tate*, 2025 WL 933947, at *4 (S.D. Tex. Mar. 27, 2025). And Respondent has not provided the Court with any information about how ICE has "consider[ed] all the facts of the case including . . . the history of the alien's efforts to comply with the order of removal . . . and the alien's assistance with [ICE's removal] efforts" under 8 C.F.R. § 241.13(f).

Finally, the Government maintains that "in the immigration context, habeas is limited to 'statutory and constitutional challenges' to detention." Doc.

17

8, at 12. "To be sure, not every procedural misstep raises a constitutional issue." *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). "However, where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid . . . .'" *Id.* (quoting *Waldron v. I.N.S.,* 17 F.3d 511, 518 (2d Cir. 1993)).

The record before the Court establishes that ICE failed to follow multiple regulations when it revoked Petitioner's release and re-detained him. *See Qui v. Carter,* 2025 WL 2770502, at *3-4 (D. Kan. Sept. 26, 2025) (holding that ICE violated its regulations when revoking existing OOS as it did not "provide[] any details or statistics or evidence to support" a determination of changed circumstances). As a result of ICE's failure to provide Petitioner with the required notice before his renewed detention, and lack of apparent determination of changed circumstances necessitating revocation, the undersigned finds that ICE's revocation of Petitioner's OOS was unlawful. *Id.* at *4 (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). So, the Court

recommends Petitioner's immediate release subject to the same OOS that governed his prior release.[9]

### D. Petitioner's APA claim does not lie within habeas.

Petitioner asserts Respondent also violated the APA when they re-detained him. Doc. 1, at 8. But because Petitioner's claims for relief "'necessarily imply the invalidity' of [his] confinement," his claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025); *see also id.* at 674 ("[G]iven 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (Kavanaugh, J. concurring); *Soberanes,* 388 F.3d at 1310 ("Challenges to immigration detention are

---

[9]    Respondent challenges Petitioner's *Zadvydas* claim as premature, s*ee* Doc. 8, at 8, 15-16, as Petitioner was only in detention for sixty days at the time he filed his petition. Petitioner asserts that his previous time in ICE detention should count to his time in detention. *See* Doc. 1, at 7. Given the undersigned's recommendation as to the disposition of Petitioner's claim for relief for the unlawful revocation of his OOS, the undersigned recommends the Court refrain from addressing the merits of Petitioner's *Zadvydas* claim. *See Owdetallah v. Bondi,* 2026 WL 691201, at *5 n.6 (W.D. Okla. Jan. 22, 2026) (Report and Recommendation) ("The Court need not address application of *Zadvydas* here if it adopts the undersigned's recommendation to grant habeas relief based on Respondents' violations of ICE regulations.").

properly brought directly through habeas." (citing *Zadvydas,* 533 U.S. at 687)). The Court should deny Petitioner's requests for relief under the APA.

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's petition for writ of habeas corpus, Doc. 1, and order his immediate release from custody subject to the terms of his unlawfully revoked OOS. **The undersigned further recommends that the Court order Respondent certify compliance by filing a status report within five business days of the Court's order.**

The undersigned further recommends the Court order that:

- Respondents shall not re-detain Petitioner without a pre-deprivation hearing before a neutral IJ under 8 U.S.C. § 1226(a); and

- Counsel for Respondents provide a copy of the Court's order to Counsel for the Warden of the Cimarron Correctional Facility without delay.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by May 4, 2026,

in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 30th day of April, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[10]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

21