**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| HIEP VAN NGUYEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case No. CIV-26-87-R |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |

## **ORDER**

This matter is before the Court for review of the Report and Recommendation [Doc. No. 9] issued by United States Magistrate Judge Suzanne Mitchell ordering Petitioner's release from immigration detention because Respondent unlawfully revoked Petitioner's Order of Supervision. Respondent filed a timely Objection [Doc. No. 10] to the Report. Petitioner filed a Response to the Objection [Doc. No. 11]. The matter is now at issue.

When a magistrate judge has issued a report and recommendation on a dispositive motion or prisoner petition, parties may object to the findings before the district court reviews them. *See* FED. R. CIV. P. 72(b). "'[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.'" *Hall v. Miller*, No. CIV-25-00518-JD, 2025 WL 2630738, at *1 (W.D. Okla. Sept. 12, 2025) (quoting *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996)). "A specific objection 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* (quoting *2121 E. 30th St.*, 73 F.3d at 1059). "A judge of the court

1

shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A party waives further review of a Report and Recommendation where it fails to specifically object to it. *2121 E. 30th St.*, 73 F.3d at 1060. Because Petitioner proceeds pro se, the Court will construe his filings liberally but cannot serve as his advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

The Court must now make a *de novo* determination of the portions of the Report to which Respondent objected. 28 U.S.C. § 636(b)(1).

The Magistrate found this Court has jurisdiction to hear Petitioner's claims regarding ICE's revocation of his OOS. Respondent objects, asserting 8 U.S.C. § 1252(g) bars this Court's jurisdiction. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court has repeatedly indicated this provision is to be read narrowly and applies only to the three discrete actions referenced in the statute, i.e. the "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."); *Dep't of Homeland Sec.*

2

*v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("Section 1252(g) is similarly narrow.").

Respondent claims *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292 (3d Cir. 2020) indicates challenges to any "*action* taken to execute [a removal] order," including Respondent's re-detention of Petitioner to effectuate his removal, falls under § 1252(g)'s jurisdictional bar. *Id.* at 298-99 (emphasis in original). Other courts in this district have already rejected Respondent's *Tazu* argument:

> Respondents' citation to the Third Circuit's *Tazu* decision is not persuasive in light of "the Supreme Court's consistent use of an exceedingly narrow construction on the jurisdiction channeling provisions" of § 1252. *Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *5 (W.D. Okla. Dec. 26, 2025); *see Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 153 (W.D.N.Y. 2025) (distinguishing the "*brief*" "door-to-plane" detention challenged in *Tazu* from a challenge to "ICE's ability to hold [the petitioner] in detention without adequate process for weeks and months on end").

> Further, the Court independently concludes that its ability to consider the Petition is not barred by § 1252(g). Petitioner is not seeking review of the Executive's decision to execute an order of removal. Instead, Petitioner argues that he is "detained in violation of the INA" because "Respondents have failed to comply" with the applicable regulations "prior to redetaining [him]" after he was previously released on an OOS. *See* Pet. ¶¶ 101, 103. Petitioner therefore "does not ask the Court to second-guess Respondents' discretionary decision to commence removal proceedings against him." *Lamas Aguilar v. Bondi*, No. 25-cv-00996, 2026 WL 84520, at *3 n.2 (D.N.M. Jan. 12, 2026). Petitioner instead challenges one of the "many other decisions or actions that may be part of the deportation process"—to which § 1252(g) is inapplicable. *Reno*, 525 U.S. at 482, 486 ("It is implausible that [§ 1252(g)'s] mention of three discrete events along the road to deportation [is] a shorthand way of referring to all claims arising from deportation proceedings."); *see also Ceesay*, 781 F. Supp. 3d at 151 ("[D]etention under or in connection with a final order of removal always is related to the execution of an immigration order, but courts routinely hear habeas petitions filed by individuals subject to a final order of removal.").

> Although § 1252(g) protects the Executive's prerogative to remove Petitioner, *see Reno*, 525 U.S. at 486, that protection does not preclude judicial review of whether the decision to revoke Petitioner's OOS (and order him to be detained) complied with applicable regulations. Petitioner had been released on an OOS, and the decision to revoke the OOS—a decision for which specific regulatory requirements have been adopted—is distinct from the mere execution of Petitioner's prior removal order. Accordingly, the undersigned concludes, as have multiple other district courts, that § 1252(g) does not defeat the Court's exercise of jurisdiction over a petitioner's claim that his current detention is illegal because he was not afforded the process required for revocation of his OOS.

*Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (citations modified); *see also Nguyen v. Bondi*, No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) (quotations omitted) ("Section 1252(g) is to be read narrowly[ ] . . . and it does not cover all claims arising from deportation proceedings or impose a general jurisdictional limitation."); *Van Tang v. Grant*, No. CIV-25-1468-J, 2026 WL 321461, at *2 (W.D. Okla. Feb. 6, 2026) (quoting *Tazu*, 975 F.3d at 295-96) (rejecting the Government's contention that re-detention after revocation of supervision is an action taken to execute a removal order and distinguishing *Tazu* "because the Government in that case obtained the individual's travel documents before re-detaining him and the individual sought a stay of his removal in addition to habeas relief").

The Court finds the reasoning of these other courts persuasive. Accordingly, it rejects Respondent's argument that § 1252(g) strips it of jurisdiction over Petitioner's claims.

The Magistrate found Respondent violated 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i) when it revoked Petitioner's OOS without proper process. Respondent objects, stating no violations occurred. The Magistrate found Respondent violated § 241.4(l) by

4

failing to provide Petitioner with (1) notice of the reasons for his re-detention and (2) an interview upon his re-detention.[1] Section 241.4(l) states, in relevant part:

**(l)** *Revocation of release—*

**(1)** *Violation of conditions of release*. Any alien described in paragraph (a) or (b)(1) . . . who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

**(2)** *Determination by the Service.* The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien . . . . Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

    **(i)** The purposes of release have been served;

    **(ii)** The alien violates any condition of release;

    **(iii)** It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

    **(iv)** The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

**(3)** *Timing of review when release is revoked.* If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody pursuant to a decision of [] the district director, [etc.,] under the procedures in this section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to

---

[1] Respondent briefly contends the Court should not consider the "initial interview issue" because Petitioner did not raise it in his Petition. Considering Petitioner's pro se status, and after an examination of the Petition, the Court finds the interview issue is fairly encompassed in the Petition.

occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually . . . .

Respondent argues Petitioner's supervised release was revoked pursuant to § 241.4(l)(2), which does not mandate the notice, review process, and/or interview required by § 241.4(l)(1) or § 241.4(l)(3). But Respondent fails to cite any legal authority for its interpretation, and district courts, including many in Oklahoma and the Tenth Circuit, have consistently held otherwise:

> Recently, in *Ceesay*, the government similarly argued that "under section 241.4, an informal interview is required only if supervision is revoked based on a violation of a condition of release." 781 F. Supp. 3d at 163. The court examined the regulations and concluded that it "does not make sense" that paragraphs (*l*)(1) and (*l*)(2) "provide two entirely different tracks for revocation" because paragraph (*l*)(2)(ii) includes violations of supervised release "as one of the possible reasons for revoking release." *Id.* at 164 n.25. The *Ceesay* court rejected the government's proposed interpretation of paragraph (*l*)(2) and held that, consistent with the weight of authority, the procedures of notice and an interview were required "regardless of the reason for the revocation." *Id.* at 163 ("[T]he government does not cite a single case holding that an informal interview is not required when release is revoked for a reason other than a violation."). . . .
>
> The Government's interpretation of paragraph 241.4(*l*) would also result in imbalanced procedural safeguards for noncitizens redetained under section 241.4. Specifically, in the Government's view, noncitizens who are redetained because they violated the terms of supervision, but not others, would be entitled to notice and a prompt interview. Thus, "a noncitizen suspected of violating a condition of release gets more process than a noncitizen—like [Petitioner]—who has met his obligations to report." *Id.* at 164. . . .
>
> The Court's conclusion is bolstered by the fact that it appears, based on the Court's review of other cases involving the redetention of a noncitizen to effectuate removal pursuant to 8 C.F.R. § 241.4(*l*)(2), that in the usual course ICE provides Notices of Revocation stating that the noncitizen will "promptly be afforded an informal interview," suggesting that ICE

6

understands the regulation to require the same. *See*, *e.g.*, *Chavez Barrios v. Ripa*, No. 1:25-cv-22644-GAYLES, 2025 WL 2280485, at *2 (S.D. Fla. Aug. 8, 2025) (upon detention of noncitizen whose supervision was revoked because travel documents were obtained to effectuate removal, petitioner received a Notice of Revocation of Release that stated the reasons for revocation and that petitioner would "promptly be afforded an informal interview"); *Grigorian v. Bondi*, No. 25-cv-22914, 2025 WL 1895479, at *2 (S.D. Fla. July 8, 2025) (similar, and there was "no indication in the record that [petitioner] at any time failed to comply with his Order of Supervision"); *Tanha v. Warden, Baltimore Detention Facility*, No. 25-cv-02121, 2025 WL 2062181, at *1-2 (D. Md. July 22, 2025) (same); *Medina v. Noem*,794 F. Supp. 3d 365, 370-71 (D. Md. Aug. 11, 2025) (similar, and notice of revocation stated that reason for revocation was that "ICE ha[d] determined that [petitioner] can be expeditiously removed from the United States pursuant to the outstanding order of removal against [him]"); *Tran v. Baker*, No. 25-cv-01598, 2025 WL 2085020, at *1-2 (D. Md. July 24, 2025) (similar); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225 (D. Mass. 2025) (similar).

*Zhu v. Genalo*, 798 F. Supp. 3d 400, 409-13 (S.D.N.Y. 2025) (citations modified); *see also*

*Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *5-6 (W.D. Okla. Jan. 15,

2026) (collecting cases) ("Therefore, the Court finds, as have other courts to consider the

question, that the notice and interview requirements of § 241.4(*l*)(3) apply to revocations

conducted pursuant to § 241.4(*l*)(2)."); *Nguyen v. Bondi*, No. CIV-26-0056-HE, 2026 WL

1455332, at *7-8 (W.D. Okla. Mar. 26, 2026), *report and recommendation adopted in* 2026

WL 1034405 (Apr. 16, 2026) (finding the procedural requirements of § 241.4(l)(1) and

§ 241.4 (l)(3) apply to re-detentions conducted under § 241.4(l)(2)); *Olivera-Martinez v.*

*Valdez*, No. 26-cv-01120-NYW, 2026 WL 1361538, at *3 (D. Colo. May 15, 2026) (same).

The Court finds the analyses of its fellows persuasive on this issue. Accordingly,

though Petitioner's OOS was seemingly revoked pursuant to § 241.4(l)(2), he was entitled

to notice of the reasons for that revocation and a prompt informal interview to allow him an opportunity to challenge it.

Petitioner was re-detained on November 25, 2025 [Declaration of Deportation Officer Juan Soto, Doc. No. 8-1, ¶¶ 18-19]. However, he was not served with a Notice of Revocation or provided an informal interview until March 17, 2026 [*See* Doc. No. 8-8]. Soto Declaration, ¶ 25. The Court agrees with the Magistrate and finds Respondent violated its own regulations pursuant to § 241.4(l) when it re-detained Petitioner without adequate notice or a prompt informal interview.[2]

The Magistrate also found Respondent violated 8 C.F.R. § 241.13(i) by revoking Petitioner's OOS without properly determining changed circumstances indicated a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Section 241.13(i) provides:

> **(2) Revocation for removal.** The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . .

> **(3) Revocation procedures.** Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. . . .

Petitioner was released on an OOS in 2004 due to the lack of a repatriation agreement between the United States and Vietnam. Soto Declaration, ¶¶ 9-11. In the

---

[2] Beyond asserting that revocations pursuant to § 241.4(l)(2) do not require notice or an interview, Respondent does not adequately argue that it did not violate § 241.4(l). Respondent has thus waived this Court's de novo review of the issue.

8

ensuing twenty years, ICE continued to determine there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future. *Id.* ¶¶ 15, 17. Now, Respondent asserts that given the increase in removals to Vietnam in the past year and because Vietnam has issued a travel document for every request submitted since February 2025, ICE determined Petitioner's removal was likely in the foreseeable future. *Id.* ¶¶ 26-27. This is the sole support Respondent offers in the Objection to indicate its determination of changed circumstances.[3]

Other courts in this district have found a "general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years" is insufficient to "satisfy the § 241.13(i)(2) determination of a 'significant likelihood that *the* alien may be removed.'" *Cao*, 2026 WL 637617, at *5 (quoting § 241.13(i)(2)); *see also Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) ("Respondents provided no evidence of progress they made towards removal of Petitioner himself before re-detention."). Moreover, courts have indicated that a failure to indicate circumstances changed *prior* to revocation of an OOS violates § 241.13(i)(2). *See id.*; *Cao*, 2026 WL 637617, at *5 ("And it was not until . . . almost two months [after revocation of petitioner's OOS]" that petitioner's travel document request was submitted.); *Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502, at *3 (D. Kan. Sep. 26, 2025) (evidence indicated the asserted "changed circumstances" "did *not*

---

[3] Though Respondent does not mention it in its Objection, the Court notes that when Petitioner was re-detained in 2025, he was told he was being taken into custody "given his final order of removal and a change in policy and bed space availability." Soto Declaration, ¶¶ 18-19.

lead to the determination to revoke petitioner's release, as officials' first request for a travel document for petitioner after the revocation was to the Chinese Consulate, with no request made to the Embassy until June 2025 (five months after revocation)").

The increase in removals to Vietnam in the past year does not indicate Petitioner himself was significantly likely to be removed at the time of his re-detention. Respondent has inadequately disputed the Magistrate's finding that Respondent did not establish, prior to revoking Petitioner's OOS, changed circumstances resulted in its belief that Petitioner's removal was significantly likely in the reasonably foreseeable future.[4] The Magistrate issued a well-reasoned opinion on this issue, and on this record, the Court agrees. Respondent violated § 241.13 by failing to make a proper changed-circumstances determination.[5]

Accordingly, the Court agrees with the Magistrate that Respondent violated § 241.4(l) and § 241.13(i) when revoking Petitioner's OOS without proper notice, a prompt interview, or making a proper changed circumstances determination prior to revocation.

---

[4] The Court notes that a travel document request for Petitioner was sent to the Consulate of Vietnam sometime after December 11, 2025. Soto Declaration, ¶ 21. However, Respondent does not mention this in its Objection. In any event, the request was not sent until weeks after Petitioner's re-detention.

[5] The Court notes § 241.13 also requires an informal interview be provided to individuals whose release is revoked pursuant to its terms. *See Cao*, 2026 WL 637617, at *5 (citations omitted) (Section 241.13(i)(3) "requires 'an initial informal interview promptly after . . . return to [ICE] custody. . . .' There is no indication in the record that Petitioner received the required interview."). It thus appears Respondent may also have violated § 241.13(i)(3) by failing to provide Petitioner with an interview promptly after his re-detention.

The Magistrate recommends habeas relief in the form of Petitioner's immediate release. Respondent objects, arguing (1) failure to comply with a regulation cannot be a basis for habeas relief and (2) such violations were harmless error. The appropriate remedy, according to Respondent, would be to order Respondent's compliance with the regulations.

Other courts in this district have examined and rejected similar arguments. *See Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026) (citing *Bahadorani v. Bondi*, No. 25-1091-PRW, 2025 WL 3048932, at *3 (W.D. Okla. Oct. 31, 2025)) (finding a "complete breakdown in process" and ordering Petitioner's immediate release where the Government provided no evidence to show Petitioner ever received an informal interview after his re-detention); *Guerra*, 2026 WL 114258, at *7-8 (finding habeas relief was warranted where the Government failed to provide notice of the reasons for Petitioner's revocation prior to any opportunity he had to challenge his revocation); *Cao*, 2026 WL 637617, at *5-6 (finding violations of § 241.13(i) denied Petitioner due process and entitled him to habeas relief); *Nguyen*, 2026 WL 396548, at *4 (failure to establish changed circumstances rendered revocation ineffective and entitled petitioner to release under 28 U.S.C. § 2241(c)(3)); *Pham*, 2025 WL 3243870, at * 1 ("fail[ure] to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of [p]etitioner's re-detention" "amounts to a due process violation, entitling the petitioner to habeas relief" in the form of immediate release); *Ye v. Bondi*, No. CIV-25-1230-D, 2025 WL 3485420, at *3 (W.D. Okla. Dec. 4, 2025) ("ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation

11

unlawful, and [] his release . . . appropriate under 28 U.S.C. § 2241(c)(3).”); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (ordering petitioner’s immediate release due to ICE’s failure to comply with § 241.13(i)); *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4-5 (W.D. Okla. Feb. 20, 2026) (indicating the Government’s regulatory violation implicated due process concerns without a prejudice inquiry, stating any such prejudice inquiry would nevertheless be satisfied where ICE failed to abide by its own regulations, and ordering Petitioner’s immediate release from custody).

Here, Petitioner did not receive notice of the reasons for his revocation or an informal interview until nearly four months after his re-detention. Moreover, ICE did not make a proper changed circumstances determination prior to that re-detention. Accordingly, the Court finds this is the sort of “complete breakdown” in process that entitles Petitioner to habeas relief.[6]

---

[6] The Court finds this

> matter is distinguishable from *Bahadorani*, 2025 WL 3048932, *appeal docketed*, No. 25-6177 (10th Cir. Nov. 4, 2025). Unlike in *Bahadorani*, where the petitioner was “provided the reasons for his detention” and “an interview related to a review of his detention,” *id.* at *3, [on the same day he was detained or within three weeks of his detention], Respondents here failed to provide proper § 241.13(i)(3) notice to Petitioner or any meaningful opportunity to challenge his revocation, *see Hamidi*, 2025 WL 3452454, at *3-4.

*Cao*, 2026 WL 637617, at *6 (citations modified); *see also Guerra*, 2026 WL 114258, at *7 (“Unlike *Bahadorani*, where the petitioner was ‘provided the reasons for his detention,’ *id.* at *3, Respondent here failed to provide notice that informed Petitioner of the reasons for his revocation prior to any opportunity he was provided to challenge his revocation”).

Respondent argues that because Petitioner eventually received notice of the reasons for his detention and an informal interview, any regulatory violations have been cured and habeas relief is inappropriate. But even if this were true, the Court agrees with many of its fellow courts that Respondent's failure to determine changed circumstances prior to revoking Petitioner's OOS was not a harmless error, amounts to a due process violation, and entitles Petitioner to habeas relief in the form of immediate release. *See Qui*, 2025 WL 2770502, at *3 (finding any violation of § 241.(i)(2) "would have wrongly resulted in petitioner's detention and the revocation of his release, and respondents have not explained how such a violation could therefore be considered harmless. Nor would it be appropriate merely to require substitute process, as respondents have had ample opportunity in this litigation to explain how officials determined that the revocation of release was justified by changed circumstances.").

Accordingly, the Court ADOPTS the Report and Recommendation.[7] The Petition is GRANTED to the extent it requests habeas relief pursuant to 28 U.S.C. § 2241.[8] Respondent is ordered to release Petitioner from custody pursuant to the terms of his

---

[7] "Nothing herein should be construed to foreclose the actual receipt of a travel document from Vietnam regarding Petitioner as the type of changed circumstance that would allow for compliance with § 241.13(i)(2), or if other future events create a significant likelihood that he will be removed in the reasonably foreseeable future." *Nguyen*, 2026 WL 396548, at *4 n.5.

[8] The Magistrate recommends that the Court deny Petitioner's requests for relief under the APA, and Petitioner did not object to this finding. Furthermore, the Magistrate recommends the Court should decline to consider Petitioner's *Zadvydas* claim if it grants habeas relief based on Respondent's regulatory violations. Petitioner did not object to this recommendation either. Accordingly, the Court DENIES Petitioner's requests for relief pursuant to the APA and declines to consider Petitioner's *Zadvydas* claim.

unlawfully revoked Order of Supervision and to promptly certify their compliance with this Order. Should Respondent attempt to re-detain Petitioner once more, it shall comply with all applicable regulations in so doing.

IT IS SO ORDERED this 29th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE